**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

KEVIN BELFORT,

          Plaintiff,

    v.

MORGAN PROPERTIES, LLC; and
JERRY PEEK,

          Defendants.

Civil No. 16-5207(RMB/KMW)

**OPINION**

APPEARANCES:

Caroline Hope Miller, Esq.
DEREK SMITH LAW GROUP, PLLC
1845 Walnut Street, Suite 1600
Philadelphia, PA 19004
    *Counsel for Plaintiff.*

A. Nicole Stover, Esq.
STRADLEY RONON STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103
-and-
Michael D. O'Mara, Esq.
STRADLEY RONON STEVENS & YOUNG, LLP
Libertyview
457 Haddonfield Road, Suite 100
Cherry Hill, NJ 08002
-and-
Adriel Jedrek Garcia, Esq.
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
    *Counsel for Defendant Morgan.*

George James Matz, Esq.
Michael J. Revness, Esq.
KURTZ & REVNESS, PC
Three Glenhardie Corporate Center
1265 Drummers Lane, Suite 120
Wayne, PA 19087
    *Counsel for Defendant Peek.*


**BUMB, United States District Judge:**

This matter comes before the Court upon the filing of a motion for summary judgment, [Dkt. No. 21], by Defendant Morgan Properties Payroll Services, Inc. (improperly pleaded as "Morgan Properties, LLC") ("Morgan") seeking the dismissal of all claims against it pursuant to Fed. R. Civ. P. 56, and a motion for partial summary judgment, [Dkt. No. 22], by Defendant Jerry Peek ("Peek", and collectively with Morgan, the "Defendants") seeking the dismissal of Counts III through VII in Plaintiff's Complaint. For the following reasons, both motions will be GRANTED, in part, and DENIED, in part.

**I.    Background[1]**

---

[1] All facts, unless otherwise stated, are undisputed facts taken from Morgan's Statement of Material Facts Not in Dispute ("DSMF"). [Dkt. No. 21-2]. These facts are primarily drawn from Morgan's business records; the depositions of Peek, Plaintiff, Jennifer Allen, and Debbie Quigley; and the transcripts of recordings Plaintiff surreptitiously compiled while employed by Morgan. For the purposes of this motion, wherever reasonable, the evidence is taken in the light most favorable to Plaintiff, the non-movant, and all reasonable inferences are granted to Plaintiff. See Scott v. Harris, 550 U.S. 372, 380 (2007); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).

Plaintiff Kevin Belfort alleges that he was subjected to a hostile work environment and then discriminated against and ultimately terminated either because of his sex or in retaliation for complaining about his mistreatment. Morgan, Plaintiff's former employer, argues that Plaintiff was terminated because of poor performance and unprofessional behavior. A summary of the facts relevant to Morgan and Peek's respective motions for summary judgment is provided below.

A. <u>Plaintiff's Employment with Morgan</u>

Morgan is a residential property management company that manages apartment communities throughout the United States, including several communities in New Jersey. (DSMF ¶ 1). On July 2, 2015, Plaintiff began his employment with Morgan as a Maintenance Technician at its Towers of Windsor community in Cherry Hill, New Jersey. (DSMF ¶ 2). Maintenance technicians are responsible for maintaining the grounds and common areas of apartment communities, and perform various tasks including but not limited to painting, repairs, and trash and snow removal. (DSMF ¶ 10). Moreover, maintenance technicians are tasked with "work orders" or "make-readies," the processes of completing repairs and maintenance requests from current residents, and doing maintenance on vacant apartments to ensure they are prepared for new tenants, respectively. (DSMF ¶¶ 11-13). Plaintiff was initially tasked with doing "make-readies" but was

eventually reassigned to work orders because, as Plaintiff concedes, he did not like that work and was "horrible" at "make-readies" due to his over attention to small details. (DSMF ¶14; Pl.'s Dep. 130:22-132:11).

The maintenance team on which Plaintiff worked at Towers of Windsor included maintenance technicians Juan Heredia, Jose Martinez, and Christian Hoffman; assistant maintenance supervisor Ismael Muñoz; and maintenance supervisor Jerry Peek, Plaintiff's direct supervisor. (DSMF ¶ 5). Jennifer Allen was the property manager of Towers of Windsor and supervised all employees at that location. (DSMF ¶¶ 6-7). Allen's supervisor was Debbie Quigley, the regional property manager for Plaintiff's region. (DSMF ¶ 8). Quigley reported to, among others, Christine Beechen, the area vice president. The director of human resources covering Plaintiff's region was Krista Reynolds.

When he began his employment with Morgan, Plaintiff was new to maintenance, and he often relied on the other members of the maintenance team for assistance and advice, leading to tension between he and some of the maintenance team members, who complained that Plaintiff did not try to solve issues himself before seeking assistance. (DSMF ¶¶ 15-16).

### B. Peek's Alleged Harassment of Plaintiff

According to Plaintiff, Peek began to regularly make offensive comments and inappropriately touch Plaintiff early in Plaintiff's tenure with Morgan. (DSMF ¶¶ 21-22). As Plaintiff tells it, Peek on multiple occasions grabbed Plaintiff's buttocks, sometimes while simultaneously barking at him like a dog; touched his nipples without his permission; repeatedly penetrated Plaintiff's ear with his finger, seemingly simulating a sex act; tripped him; and "bumped" him. (DSMF ¶ 22; Pl.'s Dep. 51:20-52:18, 54:12-19, 54:25-55:12). Plaintiff was not Peek's sole victim. Peek also exhibited some of this behavior towards other members of the maintenance team. (Pl.'s Dep. 58-62). Plaintiff has also accused Peek of, on one occasion, reaching up Plaintiff's shorts, pinching Plaintiff's thigh, and saying "we got a strong one here" and inviting other employees to "feel." (Pl.'s Dep. 53:5-9). Moreover, Peek also called Plaintiff gay and used some variation of "fag" or "faggot" towards Plaintiff on multiple occasions. (Pl.'s Dep. 55:18-19). On at least one occasion, and possibly as many as ten, Peek made a remark to Plaintiff about a "San Francisco flip-flop," which Plaintiff understood as a crude joke about homosexuals. (Pl.'s Dep. 116:1-16).

Peek has admitted to some of this behavior, including referring to Plaintiff as gay on at least one occasion, putting his fingers in Plaintiff's ear, "spank[ing]" his employees, and

referring to "San Francisco flip-flops." He characterizes his behavior, however, as mere "horseplay." (Peek Dep. 24:1-29:13).

Plaintiff made his first report of Peek's offensive behavior on December 21, 2015, and met with Allen and Quigley each of the two following days to discuss his complaints.[2] (DSMF ¶¶ 19-20). Believing that Peek's behavior amounted to mere juvenile "horseplay" and "high school antics," Quigley arranged a one on one meeting between Plaintiff and Peek in the hope that the two of them could resolve their differences. (DSMF ¶¶ 24-26). Plaintiff and Peek met on January 4, 2016. Later that day, Plaintiff went back to Allen and made additional allegations against Peek.[3] (DSMF ¶ 30).

On January 8, 2016, Morgan issued Peek a "last chance" agreement, warning him that if his unprofessional conduct continued he would be terminated. (Reynolds Cert., Ex. F). Also on January 8, 2016, Plaintiff met with Beechan, who instructed him of Morgan's plans with regard to Peek. On January 22, 2016, Beechen sent Plaintiff a letter memorializing the January 8th meeting and informing Plaintiff that if at any point he came to

---

[2] Plaintiff did not report all of Peek's inappropriate behavior, including the incident where Peek allegedly pinched Plaintiff's thigh, during his initial meetings. Plaintiff supplemented his allegations against Peek at a second meeting on January 4, 2016.
[3] The conduct of which Plaintiff complained in this second meeting with Allen was alleged to have occurred before Plaintiff's first meeting with Allen.

believe he was being retaliated against for making a complaint against Peek, he should immediately report his concerns to management. (Reynolds Cert., Ex. G).

There is no dispute that after being issued the "last chance" warning, Peek refrained from ever again getting physical with Plaintiff. Plaintiff did, however, report that Peek and other unnamed individuals continued to make "ignorant" and "disrespectful" comments and treat him inappropriately. Specifically, Plaintiff testified that Peek continued to use homophobic slurs toward him frequently and to taunt him by whistling "jingle bells" at him.[4] (Pl.'s Dep. 222-24; 120:18-25; 113:5-15). Plaintiff complained to Allen about this conduct in June, 2016, and in July, 2016, Plaintiff met with Beechan to discuss his ongoing issue with Peek. (DSMF ¶¶ 36-37). In October, 2016, Plaintiff made further allegations to Reynolds and Allen about inappropriate comments being made about residents by Morgan employees, and "looks" he was receiving from Peek whenever new rules were implemented for the maintenance team. Plaintiff refused to provide specifics to Allen or Reynolds when pressed about his co-workers' alleged

---

[4] One incident between Peek and Plaintiff occurred when Plaintiff was decorating at Towers of Windsor around Christmas of 2015, and Peek called Plaintiff gay. (Pl.'s Dep. 76:17-25).

inappropriate comments concerning the residents, but it does not appear that these specific complaints were about Peek.

C. <u>Plaintiff's Transfer and Termination</u>

In the spring and summer of 2016, Morgan received reports from residents that someone from maintenance was telling them that their units were unsafe due to mold and other issues. (Reynolds Cert., Ex. J, K). After investigating these reports, Allen concluded that Plaintiff was behind these issues. Thus, on July 21, 2016, Plaintiff received an "Employee Warning Notice" ("write-up") for allegedly telling a resident to move out of Towers of Windsor, disparaging Peek to another resident, and refusing to provide Peek with a "daily log form," instead telling Peek to "contact [his] lawyer for the paperwork." (Reynolds Cert., Ex. L). Moreover, during the same time period, Plaintiff's co-workers and supervisors became aware that Plaintiff was recording their conversations. (Pl.'s Dep. 82-85).

On October 13, 2016, Reynolds issued Plaintiff a letter advising him that due to "various employment issues," Plaintiff was being transferred to The Colonials, another Morgan property. (Reynolds Cert., Ex. M). The Colonials is located close to Towers of Windsor, and Plaintiff had the same title, responsibilities, and pay in his new position. (Pl.'s Dep. 165:13-168:7). In his new position, Plaintiff's maintenance

supervisor was Peter Desiderio and the property manager was Lorna Martin.

Morgan was apparently unsatisfied with Plaintiff's performance at The Colonials as well. Plaintiff continued to record conversations despite being asked to stop. (Pl.'s Dep. 92:13-15). On January 10, 2017, Plaintiff received another write-up, this time for poor performance including taking excessive breaks, taking too long on assigned tasks, refusing to complete assigned tasks, and failing to communicate with Desiderio (Reynolds Cert., Ex. N). Moreover, Plaintiff continued to have what Morgan considered inappropriate contact with residents. (Pl.'s Dep. 181-185). Specifically, Plaintiff shared with two female residents comments that Desiderio had allegedly made about them, leading the residents to complain to Morgan. (Id.; Reynolds Cert., Ex. S). Ultimately, on January 27, 2017, Reynolds sent Plaintiff a letter informing him that he was terminated, effective immediately, citing performance deficiencies and inappropriate conversations with residents as the bases of his termination. (Reynolds Cert., Ex. T).

### D. This Suit

Well before he was terminated, on or about March 11, 2016 Plaintiff filed charges with the EEOC against Defendants. On or about June 24, 2016, the EEOC sent Plaintiff a Right to Sue Letter. On August 26, 2016, Plaintiff filed a seven count

Complaint in this Court alleging: (1) gender and sex discrimination against Morgan under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-2[5]; (2) retaliation against Morgan under Title VII, 42 U.S.C. § 20002-3(a); (3) sex discrimination against Morgan under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12(a); (4) retaliation against Morgan under NJLAD, N.J.S.A. 10:5-12(d); (5) aiding and abetting under NJLAD, N.J.S.A. 10:5-12(e); (6) assault and battery against Peek; and (7) intentional infliction of emotional distress. The currently pending motions for summary judgment were filed on November 22, 2017.

## II.    Summary Judgment Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id.

---

[5] Although Plaintiff does not formally include counts for sexual harassment under Title VII or the New Jersey Law Against Discrimination, based on the factual allegations therein, this Court will construe his Complaint as having pleaded such claims along with discrimination under both statutes.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." <u>Meyer v. Riegel Prods. Corp.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. <u>Anderson</u>, 477 U.S. at 252. Further, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. <u>Scott v. Harris</u>, 550 U.S. 373, 380 (2007).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" <u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

**III. Analysis**

Morgan seeks summary judgment on each of Plaintiff's claims against it. Peek seeks summary judgment on all but Plaintiff's battery claim against him. The Court addresses each of the Defendants' arguments below.

    A. Claims Against Morgan

Plaintiff alleges that Morgan harassed and discriminated against him because of his sex, and that it retaliated against him for complaining of his mistreatment. Moreover, Plaintiff seeks to hold Morgan liable for intentional infliction of emotional distress.

Discrimination and retaliation claims under both Title VII and NJLAD are analyzed under the burden shifting framework initially set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 841 (3d Cir. 2016). The familiar McDonnell Douglas framework requires that Plaintiff first establish a prima facie case of discrimination or retaliation. If Plaintiff establishes a prima facie case, the burden then shifts to Defendant to articulate a legitimate, nonretaliatory or nondiscriminatory reason for its actions. If Defendant articulates such a reason, the burden then shifts back to Plaintiff to establish that the proffered nonretaliatory or nondiscriminatory explanation is merely a pretext for the discrimination or retaliation. At the

summary judgment stage, Plaintiff may meet this burden by
"point[ing] to some evidence, direct or circumstantial, from
which a factfinder could reasonably either (1) disbelieve the
employer's articulated legitimate reasons; or (2) believe that
an invidious discriminatory reason was more likely than not a
motivating or determinative cause of the employer's
action." Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir.
2006) (quoting Fuentes v. Perskie, 32 F. 3d 759, 764 (3d Cir.
1994)) (internal quotation marks omitted). In other words,
Plaintiff must "demonstrate such weaknesses, implausibilities,
inconsistencies, incoherencies, or contradictions in the
employer's proffered legitimate reasons for its action that a
reasonable factfinder could rationally find them unworthy of
credence, and hence infer that the employer did not act for [the
asserted] nondiscriminatory reasons." Id. (quoting Fuentes, 32
F.3d at 765) (internal quotation marks omitted).

> *a. Disparate Treatment and Discriminatory
>    Discharge*

Under Title VII, it is unlawful for an employer "to
discriminate against any individual with respect to his
compensation, terms, conditions, or privileges of employment,
because of such individual's . . . sex." 42 U.S.C. § 2000e-
2(a)(1). Under the NJLAD, it is unlawful "[f]or an employer,
because of the . . . sex . . . of any individual . . . to

discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.J.S.A. 10:5-12(a).

Plaintiff argues that Morgan violated both of these statutes by subjecting him to disparate treatment and then terminating him because of his sex. Morgan, however, argues that it is entitled to summary judgment on Plaintiff's claims of discrimination because Plaintiff alleges no discriminatory animus by any decision-maker and Plaintiff cannot establish that Morgan's proffered reason for terminating him—poor performance—was pretext for discrimination. The Court agrees that Plaintiff has failed to establish a prima facie case of either disparate treatment or discriminatory termination on account of his sex. Moreover, even were he able to establish his prima facie cases, Plaintiff has not pointed to sufficient evidence of pretext.

As set forth above, claims of sex discrimination under both Title VII and the NJLAD are evaluated under the McDonnell Douglas framework. To establish a prima facie case of sex discrimination under either Title VII or the NJLAD, Plaintiff must establish that: (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action[6]; and (4) that adverse

---

[6] Not every unwelcome employment decision is actionable. Instead, "[a]n actionable adverse employment action is 'a significant

employment action gives rise to an inference of unlawful

discrimination. <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403,

410–11 (3d Cir.1999).

Even accepting Plaintiff's version of events as true and

granting him every inference, he cannot make out his <u>prima facie</u>

case because he points to no evidence of record that gives rise

to the inference that sex played any role in (1) his work orders

being closed out early or late; (2) his being "singled out" to

complete "daily logs"; (3) his "shunning" at the hands of his

coworkers and those same coworkers' refusal to provide him

assistance or guidance; (4) the decision to issue Plaintiff

"write-ups"; or (5) his termination.

---

change in employment status, such as hiring, firing, failing to
promote, reassignment with significantly different
responsibilities, or a decision causing a significant change in
benefits.'" <u>Betts v. Summit Oaks Hosp.</u>, 687 Fed. Appx. 206, 2017
WL 1506640, at *2 (3d Cir. Apr. 27, 2017) (quoting <u>Burlington
Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998)). Put
differently, an adverse employment action must be "serious and
tangible enough to alter an employee's compensation, terms,
conditions, or privileges of employment." <u>Fiorentini v. William
Penn Sch. Dist.</u>, 665 Fed. Appx. 229, 234 (3d Cir. 2016) (quoting
<u>Cardenas v. Massey</u>, 269 F.3d 251, 263 (3d Cir. 2001)). Plaintiff
argues that he was subjected to several adverse employment
actions. Morgan argues that the only adverse employment action
taken against Plaintiff was his termination. The Court agrees
with Morgan, but even adopting Plaintiff's position, he has
failed to point to any evidence that gives rise to an inference
that any of the supposedly adverse actions pointed to by
Plaintiff were taken against him on the basis of his sex.

Where Plaintiff's pre-termination complaints of disparate treatment are concerned, even assuming those actions rise to the level of "adverse employment actions," Plaintiff points to nothing in the record that indicates that he was singled out because of his sex, or that his sex played any part in any of these actions. Plaintiff worked on maintenance teams consisting entirely of men and was directly supervised by men. Plaintiff does not allege and does not point to any record evidence that establishes that anyone outside of his protected class received preferential treatment with regard to the adverse actions supposedly taken against him—or even that they were treated differently, or that other members of his protected class were subjected to discrimination. Moreover, the only actions taken by individuals outside of Plaintiff's protected class were the written warnings issued by Martin and Reynolds. See Dungee v. Ne. Foods, Inc., 940 F. Supp. 682, 688 n. 3 (D.N.J. 1996) (compiling cases finding inference of discrimination weakened where decision maker is a member of plaintiff's protected class). There is nothing in the record that implies that these warnings had anything to do with Plaintiff's sex.

Plaintiff's termination similarly gives rise to no inference of discrimination. The decisions to transfer Plaintiff and to terminate his employment were made by Morgan's director of human resources, Krista Reynolds. Plaintiff points to no

evidence that Peek, the alleged individual discriminator, participated in this decision, and the record indicates that no one from Towers of Windsor played any role in Plaintiff's termination, as Plaintiff had been transferred to The Colonials and was being supervised by Desiderio and Martin, who conveyed complaints about Plaintiff's performance to Reynolds. Moreover, Plaintiff presents no evidence suggesting that his sex was even considered by Reynolds in reaching the decision to terminate him, or that Reynolds displayed any animus toward Plaintiff or men in general. He does not provide evidence that he was replaced by someone from outside his protected class, nor is there anything in the record suggesting that employees outside of his protected class were not terminated despite similar performance issues.

Even were Plaintiff able to meet his burden and establish a prima facie case, for largely the same reasons, Plaintiff cannot establish that Morgan's legitimate non-discriminatory reasons for firing him—unprofessional behavior and poor performance—were a pretext for discrimination. Plaintiff does not dispute that he recorded his coworkers on multiple occasions without their permission after he was instructed to cease such recording, told residents that their units were unsafe without any basis for doing so, or conveyed to residents comments allegedly made about them by Morgan employees, causing multiple resident complaints

17

and causing at least one resident to move out of Towers of Windsor. Moreover, as addressed above, Plaintiff points to nothing in the record indicating that Reynolds harbored any sex-based animus toward him or that Peek impermissibly affected Reynolds' decision. As such, Plaintiff cannot genuinely dispute Morgan's legitimate reason for terminating him. Thus, Plaintiff's claims of discriminatory discharge and disparate treatment do not survive summary judgment.

In his opposition, Plaintiff conflates his claims for disparate treatment, discriminatory discharge, harassment, and retaliation, interchangeably arguing facts relevant to one claim as evidence in support of another. Having attempted to parse through Plaintiff's arguments, the Court finds that Plaintiff's disparate treatment claims amount to an allegation that he was treated differently than his male co-workers because he is a male. Based on this record, no reasonable jury could find that Plaintiff suffered disparate treatment or was terminated because of his sex.

### b. Hostile Work Environment Harassment

Title VII and the NJLAD prohibit hostile work environment sexual harassment as a form of sex discrimination. Moody v. Atlantic City Board of Education, 870 F.3d 206 (3d Cir. 2017) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-66 (1986)); Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 452

18

(N.J. 1993). Plaintiff seeks to hold Morgan responsible for the allegedly harassing behavior to which he was subjected by Peek.

To establish a hostile work environment claim against an employer under Title VII, a plaintiff must show that (1) he suffered intentional discrimination because of a protected classification; (2) the discrimination was severe or pervasive[7]; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability. See Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001); see also Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005); Edmond v. Plainfield Bd. of Educ., 171 F. Supp. 3d 293, 309 (D.N.J. 2016). The elements of a hostile work

---

[7] In determining whether an environment is hostile, "a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Mandel v. M&Q Packaging Corp., 706 F.3d 157, 168 (3d Cir. 2013)(quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "Title VII is not intended as a 'general civility code,' and requires that 'conduct must be extreme' to constitute the kind of 'change in the terms and conditions of employment' the statute was intended to target." Burgess v. Dollar Tree Stores, Inc., 642 Fed. Appx. 152, 155 (3d Cir. 2016) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)); see also Vance v. Ball State Univ., 133 S. Ct. 2434, 2455 (2013) (Ginsburg, J., dissenting) ("Title VII imposes no 'general civility code.' It does not reach 'the ordinary tribulations of the workplace,' for example, 'sporadic use of abusive language' or generally boorish conduct.") (internal citations omitted).

environment claim under NJLAD resemble the first four elements of the Title VII hostile work environment claim. Caver, 420 F.3d at 262–63.

In sex discrimination hostile work environment claims where the alleged harasser and the victim of the harassment are of the same sex, as is the case here, the United States Court of Appeals for the Third Circuit has found that there are at least three ways that a plaintiff may establish that the harassment was because of the plaintiff's sex: 1) where there is evidence that the harasser sexually desires the victim; 2) where there is no sexual attraction but where the harasser displays hostility to the presence of a particular sex in the workplace; or (3) where the harasser's conduct is motivated by a belief that the victim does not conform to the stereotypes of his or her gender. Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 262–63 (3d Cir. 2001). "Whatever evidentiary route a plaintiff takes, he or she must 'always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted' discrimination because of" gender or sex. Betz v. Temple Health Sys., 659 F. App'x 137, 143 (3d Cir. 2016)(quoting Bibby, 260 F.3d at 264).

Morgan argues that Plaintiff's sexual harassment claims must be dismissed because (1) Plaintiff was not treated differently by Peek than similarly situated employees because of

his sex or gender; (2) Peek's purported misconduct was not sufficiently severe or pervasive to support a claim for sexual harassment; and (3) even were the Court to find that Plaintiff had sufficiently supported his claims for harassment, Morgan cannot be liable for Peek's conduct because it has a policy against unlawful harassment and Plaintiff failed to mitigate his damages by making a prompt report. See Faragher v. City of Boca Raton, 524 U.S. 775 (1998); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

Granting all reasonable inferences to Plaintiff, the Court finds that the evidence of hostile work environment harassment is such that a reasonable jury could find for Plaintiff. The court finds that the record establishes legitimate disputes of fact regarding the severity or pervasiveness of Peek's conduct. Plaintiff cites to evidence that Peek nearly constantly mocked him and touched him without his permission for a period lasting at least five months. Moreover, Plaintiff has presented sufficient evidence from which a reasonable jury could find that such conduct detrimentally affected him and that such conduct would have detrimentally affected a reasonable person.

Whether Peek's behavior was directed at Plaintiff because of his sex is a jury question. The Court finds that none of the evidence presented in this case satisfies either of the first two routes to proving same-sex hostile environment

discrimination highlighted by Bibby. The Court finds, however, that Plaintiff has pointed to enough evidence that a reasonable jury may find that Peek singled him out for particularly harsh treatment because Peek did not consider him to conform to the stereotypes of his gender. Morgan argues that Plaintiff cannot make this showing because there is no evidence that Plaintiff is gay, he never did anything to make anyone believe that he is gay, and he never did "any of the stereotypical things that a gay male may do." (Def. Br. 14).

Morgan paints with too broad a brush. There are male stereotypes that have nothing to do with sexual orientation: things such as "being aggressive, assertive, and non-complaining," for instance. See Burnett v. Union R.R. Co., No. CV 17-101, 2017 WL 2731284, at *4 (W.D. Pa. June 26, 2017). Plaintiff has pointed to evidence that, among other things, Peek may have treated him more harshly than his fellow male co-workers because he "shut down" and took Peek's abuse rather than responding aggressively or playing along as he was advised, on at least one occasion, to do. Further, Plaintiff points to one incident, which Quigley and Peek admit occurred, where Peek ridiculed Plaintiff because of the way he was decorating, and Plaintiff presents evidence that in the aftermath of that incident Peek mocked him on multiple occasions by whistling "jingle bells" at him and using gay slurs against him. This is

enough to demonstrate that Peek singled Plaintiff out because he did not conform to Peek's gender stereotypes.

Moreover, although Morgan points to evidence of Peek's "similar" treatment of female employees, that behavior was not the same as that exhibited towards Plaintiff. According to Plaintiff, he saw Peek "[m]assaging the women in the office, rubbing their shoulders, rubbing their backs, making sexual innuendos," and "grab assing" with them. (Pl.'s Dep. 60:12-23). There is no evidence that Peek used similar slurs toward the women that he did with the men, or that he grabbed them in a similar manner to that alleged by Plaintiff. Although a jury may find that Peek was abusive to everyone, and had no discriminatory motive, Plaintiff has done enough to put the question to a jury.

Morgan argues that, even were the Court to find that Plaintiff's hostile work environment claims survive summary judgment, Morgan cannot be held liable for Peek's conduct because it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and Plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm." Hitchens v. Montgomery Cty., 278 F. App'x 233, 236 (3d Cir. 2008) (citing Faragher v. City of Boca Raton, 524 U.S. 775 (1998); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742

(1998)). It argues that Plaintiff behaved unreasonably by waiting until December to report Peek's conduct, and that it behaved reasonably by issuing Peek a "last chance agreement." There are enough disputed facts in the record to raise several questions about this contention, i.e., what is reasonable for someone in Plaintiff's shoes, whether it was reasonable to issue Peek a warning as opposed to terminating him, and whether and to what extent Peek's behavior persisted after his warning, among other issues. The Court will not make these determinations. Accordingly, the hostile work environment claims survive.

### c. Retaliation

Title VII prohibits an employer from "discriminat[ing] against any individual . . . because he has opposed . . . an unlawful employment practice . . . ." 42 U.S.C. § 2000e-3(a). Likewise, NJLAD makes it a violation for "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under . . . [the NJLAD] or because that person has filed a complaint, testified or assisted in any proceeding under . . . [the NJLAD] or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" the NJLAD. N.J.S.A. § 10:5-12(d). Plaintiff alleges that he was retaliated against as a result of

his internal complaint in December 2015, his EEOC complaint in April 2016, and his civil complaint in August 2016.

In order to make a prima facie case of retaliation, Plaintiff must show: (1) that he engaged in protected employee activity; (2) that there was an adverse action by the employer either after or contemporaneous with his protected activity; and (3) that there is a causal connection between his protected activity and the employer's adverse action. Marra v. Phila. Housing Auth., 497 F.3d 286, 300 (3d Cir. 2007). Where retaliation is concerned, a materially adverse action is an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Hanani v. State of New Jersey Dep't of Envtl. Prot., 205 F. App'x 71, 80 (3d Cir. 2006).

To establish causation at the prima facie stage,

a plaintiff must introduce evidence about the "scope and nature of conduct and circumstances that could support the inference" of a causal connection between the protected activity and adverse action. At this stage, "a plaintiff may rely on a 'broad array of evidence' to demonstrate a causal link between [the] protected activity and the adverse action taken." For example, very close temporal proximity between the adverse action and the protected activity may be "unusually suggestive" of a causal connection. A plaintiff can also rely on evidence such as "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus."

25

<u>Young v. City of Phila. Police Dep't</u>, 651 F. App'x 90, 95–96 (3d Cir. 2016) (internal citations omitted). Plaintiff has failed to put forth sufficient evidence of causation, and thus cannot present a <u>prima facie</u> case of retaliation. Moreover, even were Plaintiff to make his <u>prima facie</u> showing, he could not establish pretext.

Plaintiff seems to be proceeding on the theory that in response to his harassment complaints, Morgan fabricated performance issues that did not exist and used those fabricated issues against Plaintiff, ultimately leading to his termination. Aside from self-serving testimony, however, the only evidence of causation—or pretext—to which Plaintiff points is the "temporal proximity" between his complaints of harassment and Morgan's supposedly adverse actions against him. A causal connection between the protected activity and the adverse employment action can be shown where "the temporal proximity between the protected activity and the adverse action is unusually suggestive." <u>Tinio v. Saint Joseph Reg'l Med. Ctr.</u>, 645 F. App'x 173, 176–77 (3d Cir. 2016)(quoting <u>LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n</u>, 503 F.3d 217, 232 (3d Cir.2007) (internal quotation marks omitted)). "Where the temporal proximity is not unusually suggestive," however, courts "consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its

adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." Id. at 177.

As noted above, the protected activities for which Plaintiff alleges he was retaliated against were his complaint to Allen in December 2015, his EEOC complaint in April 2016, and his civil complaint in this matter in August 2016. The retaliatory acts to which he alleges he was subjected were write-ups (the first of which was in July 2016), transfer in October 2016, and termination in January 2017. Even assuming that write-ups and transfer were adverse actions for the purposes of a retaliation claim, this Court does not find that the nearly eight months between Plaintiff's complaint to Allen and the beginning of Morgan's alleged scheme to retaliate Plaintiff is "unusually suggestive" of retaliatory animus. Likewise, the Court does not find the nearly five-month period between Plaintiff's civil complaint and termination "unduly suggestive." Moreover, as discussed above with regard to Plaintiff's disparate treatment and discriminatory discharge claims, Plaintiff cannot genuinely dispute Morgan's legitimate reasons for terminating him. Without more, the Court will not permit Plaintiff to proceed on his retaliation claims.[8]

---

[8] To the extent that Plaintiff argues that the actions allegedly taken against him constituted a retaliatory hostile work

*d. Aiding and Abetting*

Plaintiff alleges a claim of aiding and abetting an NJLAD violation against Morgan. This claim is not proper. NJLAD prohibits unlawful employment practices and unlawful discrimination by employers. N.J.S.A. 10:5-12a. Individual supervisors are not defined as "employers" under the NJLAD. <u>Tarr v. Ciasulli</u>, 853 A.2d 921, 928 (N.J. 2004). "Nevertheless, the NJLAD makes it unlawful '[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the LAD],' N.J.S.A. 10:5–12e, and such conduct may result in personal liability." <u>Id.</u> Aiding and abetting liability under the NJLAD is about holding individual discriminators, who are not generally personally liable as non-employers, personally liable. Morgan, as the employer, is the primary defendant under the

_____

environment, this claim also fails. To establish such a claim, Plaintiff must prove that (1) he suffered intentional discrimination because of his protected activity; (2) the discrimination was "severe or pervasive" (3) the discrimination detrimentally affected him; (4) it would have detrimentally affected a reasonable person in like circumstances. <u>See Castleberry v. STI Grp.</u>, 863 F.3d 259, 263 (3d Cir. 2017); <u>Jensen v. Potter</u>, 435 F.3d 444, 449 (3d Cir. 2006). Unlike Plaintiff's sex based hostile environment claim, a harassment claim based on retaliation fails at the first step. There is nothing in the record that suggests that Peek's behavior towards plaintiff became worse, or changed at all, after Plaintiff complained to Allen, filed his EEOC complaint, or filed his Complaint in this matter. As such, he cannot establish that Peek harassed him because of his protected activity.

NJLAD. It did not aid and abet its own alleged discriminatory conduct.

> e. *Intentional Infliction of Emotional Distress*

Plaintiff brings a claim for Intentional Infliction of Emotional Distress ("IIED") against both Morgan and Peek. Courts the District of New Jersey and New Jersey state courts have held that the NJLAD preempts common law claims that are (1) based on the same factual predicates and (2) seek the same relief as a plaintiff's NJLAD claim. See, e.g., Gaines v. UPS, Inc., No. 2:13-3709(KM)(MCA), 2014 WL 1450113, at *5-7 (D.N.J. Apr. 14, 2014) (collecting cases and dismissing negligence and intentional infliction of emotional distress claims that were based on the same operative facts as the NJLAD claim and therefore preempted); Arevalo v. Brighton Gardens, Sunrise Senior Living, LLC, No. CV 15-2563 (MAS), 2016 WL 4975199, at *7 (D.N.J. Sept. 16, 2016); Toscano v. Borough of Lavallette, No. 04-4412, 2006 WL 1867197, at *9 (D.N.J. June 30, 2006) ("A supplementary cause of action is not allowed when the NJLAD provides a remedy for the wrong"); Quarles v. Lowe's Home Ctr., No. 04-5746, 2006 WL 1098050, at *4 (D.N.J. March 31, 2006) (dismissing plaintiff's claim for intentional infliction of emotional distress because it was "based on the same allegations supporting [p]laintiff's NJLAD claim").

Plaintiff's hostile work environment claim against Morgan has survived summary judgment. Plaintiff's Complaint makes it clear that his IIED claims are based on the same underlying conduct as his harassment claims. (See Compl. ¶ 54 ("Plaintiff . . . repeats and realleges each and every allegation made in the above paragraphs of this complaint."). Accordingly, Plaintiff's IIED claim against Morgan is preempted by the NJLAD and summary judgment on this issue will be granted.

B. <u>Claims Against Peek</u>

Peek seeks summary judgment on Plaintiff's (1) NJLAD discrimination; (2) aiding and abetting; (3) intentional infliction of emotional distress; and (4) assault claims against him.

a. *Discrimination, Including Hostile Work Environment*

In his opposition to Peek's motion, Plaintiff "concedes to Defenses [sic] argument pertaining [sic] individual liability under NJLAD 10:5-12(A) and thereby withdraws his Count 3 as to Defendant Jerry Peek, only." Pl.'s Opp. at 5 n. 1. Because Plaintiff has conceded this issue and withdrawn his discrimination claims against Peek, the Court will dismiss those claims.

b. *Aiding and Abetting*

Peek seeks summary judgment on Plaintiff's claims against him for aiding and abetting retaliation and harassment. At the outset, the Court finds that because it has dismissed Plaintiff's retaliation claim against Morgan, aiding and abetting liability as to that claim cannot exist as to Peek. See, e.g., Oguejiofo v. Bank of Tokyo Mitsubishi UFJ Ltd., 2017 U.S. App. LEXIS 13857, *10 (3d Cir. July 31, 2017) (quoting N.J.S.A. 10:5-12(f)); Tourtellotte, 636 F. App'x at 856 ("the NJLAD does not provide for individual liability for aiding and abetting if the employer is not found liable.").

Where Plaintiff's harassment claim is concerned, Peek has conceded that, because the Court has denied Morgan's motion for summary judgment on harassment—which is largely premised on the acts of Peek—he is likewise not entitled to summary judgment on Plaintiff's aiding and abetting claims against him with regard to that conduct. Def. Br. at 7 n. 1. Accordingly, this claim will proceed to trial.

c. *Intentional Infliction of Emotional Distress*

Peek refers the Court to the arguments raised by Morgan in support of its motion for summary judgment on intentional infliction of emotional distress. The Court's analysis with regard to Morgan's motion on this point applies with equal force to Peek's argument, and Peek's motion for summary judgment on

intentional infliction of emotional distress will be granted for the same reasons.

### d. *Assault*

In Count VI of the Complaint, Plaintiff alleges the tort claims of assault and battery against Peek. Peek seeks summary judgment as to Plaintiff's assault claim only.

"In New Jersey, a person is subject to liability for the common law tort of assault if: (a) he acts intending to cause a harmful or offensive contact with the person of the other, or an imminent apprehension of such contact, and (b) the other is thereby put in such immediate apprehension." Panarello v. Vineland, 160 F. Supp. 3d 734, 767 (D.N.J. Feb. 8, 2016) (quoting Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 591, 969 A.2d 1097 (2009)). Peek argues that he is entitled to summary judgment on this claim because Plaintiff cannot establish either of the required elements. The Court disagrees. The record in this case is replete with disputed facts regarding whether, and to what extent, Peek caused "offensive contact" with Plaintiff. It will be up to a jury to determine whether Plaintiff's allegations are credible, and if so whether Peek's conduct caused the requisite apprehension by Plaintiff. Accordingly, summary judgment as to Plaintiff's assault claim will be denied.

## IV.  Conclusion

For the foregoing reasons, both motions will be GRANTED, in part, and DENIED, in part. Specifically, summary judgment will be granted in favor of Morgan with respect to (1) disparate treatment and discriminatory discharge; (2) retaliation; (3) aiding and abetting; and (4) intentional infliction of emotional distress. Morgan's motion for summary judgment will be denied with respect to Plaintiff's hostile work environment claims under the NJLAD and Title VII. Peek will be granted summary judgment on (1) disparate treatment and discriminatory discharge and the aiding and abetting thereof; (2) retaliation and the aiding and abetting thereof; and (3) intentional infliction of emotional distress, and his motion will be denied with regard to (1) assault and (2) aiding and abetting harassment.

                                    s/ Renee Marie Bumb
                                    RENÉE MARIE BUMB
                                    United States District Judge


DATED: June 29, 2018